SLIP OPINION      Cite as 2015 Ark. App. 387

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-15-143

| | |
|---|---|
| | Opinion Delivered June 17, 2015 |
| MAGALY DELACRUZ<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. JV-2013-501-3] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Magaly Delacruz appeals the termination of her parental rights to her two children, A.B. and A.D. In particular, she challenges the circuit court's finding that termination of her parental rights was in the children's best interest. We affirm.

In August 2013, the Arkansas Department of Human Services (DHS) petitioned for emergency custody of four-year-old A.B. and three-year-old A.D. after their mother, Delacruz, was arrested for endangering the welfare of a minor, criminal trespass, domestic battery, and interference with emergency communication. Delacruz also tested positive for methamphetamine at the time of her arrest. The Washington County Circuit Court placed the children in the custody of Anna and Jose Guevara, family friends with whom Delacruz and the children had been living, and ordered Delacruz to have no contact with

SLIP OPINION

either the children or the Guevaras.  In the probable-cause order, the court noted that the Guevaras had a "secondary guardianship" of the children as a result of a 2009 Family in Need of Services case.  The court required Delacruz to pass three random and consecutive drug screens before she would be allowed visitation with the children.

The children were adjudicated dependent-neglected in October 2013 due to parental unfitness.  Delacruz was ordered to participate in individual counseling, have a drug-and-alcohol assessment and follow the recommendations, submit to random weekly drug screens, obtain and maintain stable housing and employment, and pay child support in the amount of $74 bi-weekly.  The children remained in their placement with the Guevaras.

A review hearing held in February 2014 revealed that Delacruz was incarcerated, and the court noted that she had not complied with any of the court's orders or the case plan. The court continued its previous orders for Delacruz and the no-contact order between her and the children.  The court also authorized visitation with the maternal grandparents and the maternal aunt every other Sunday, subject to the Guevaras' approval, and noted that "[o]nce day visits go well, if [the] Guevaras agree, visits can be overnight for one night, with Delacruz grandparents."

After a permanency-planning hearing in July 2014, the court changed the goal of the case to adoption.  The permanency-planning order noted that Delacruz had been incarcerated since 24 October 2013 and had not complied with any of the court's orders or the case plan.  The order also noted that visitation between the maternal grandparents and the children "may continue at the discretion of the Guevaras."  DHS filed a petition

for termination of parental rights in August 2014, alleging three statutory grounds. On 30 October 2014, Delacruz filed a motion for visitation, explaining that she had been released from prison on 22 August 2014 "and since that time has been in compliance with all the court orders and the case plan, making significant progress toward completion of all requirements." Delacruz requested that she be allowed to attend visitation with the maternal grandparents and that visitation be allowed every Sunday. This motion was not ruled on, however, and the termination hearing was held on 24 November 2014.

Miranda Collins, the DHS caseworker on this case, testified that Delacruz had not started or completed any services before her incarceration in October 2013 and that, since her release from prison, she had been partially compliant with the case plan but had still not completed a drug-and-alcohol assessment or submitted to weekly drug screens. She explained that Delacruz had not seen the children in fifteen months, including the two and a half months after the children had been taken into custody but before she was incarcerated. Collins opined that Delacruz had not progressed in reunification or demonstrated the ability to protect the children. She also stated that the Guevaras were interested in adopting the children.

On cross-examination, Collins stated that she had not observed any of the visits between the grandparents and the children. She explained that when the case was opened, DHS did not approve placement of the children with the grandparents because there was a true finding from 1994 on the maternal grandmother for cuts, bruises, and welts; substance-abuse possibility; and abuse with a deadly weapon. She stated that she did not know if DHS would have approved placement with the grandparents if the true



finding had not been there. She also expressed concern about where the children would sleep if placed with the grandparents.

Jose Guevara testified that he wanted the children to remain in his custody and to pursue adoption. He acknowledged that the children visited the maternal grandparents once a week, which was "fine," but stated that he and his wife did not want that relationship to continue. He stated that the grandparents had not provided any support for the children but that they had bought toys or clothes for the children on occasion.

Roberta Delacruz, the maternal grandmother, introduced a notification from DHS, dated 17 November 1994, stating that there was no credible evidence of child maltreatment with regard to her and her husband. Roberta testified that she saw the children every other week but "would like to see them all the time." She also agreed that she and her husband had not provided monetary support for the children but that they had bought toys and clothes.

Delacruz testified that since her release from prison on August 22, she had passed several drug screens and maintained employment. She expressed her wish to follow the case plan and get her children back and opined that she could provide a safe and stable home for the children. Delacruz stated that she had been paying her court-ordered child support of $74 bi-weekly since August but that she was a year behind on payments and that her work schedule had prevented her from obtaining a drug-and-alcohol assessment or submitting to weekly drug screens.

Julie Moody, the CASA volunteer assigned to the case, testified that she had visited the children in the Guevaras' home and that she had no concerns about the living

conditions or the Guevaras' ability to meet the children's health and safety needs. She also testified that she had observed visits with the maternal grandparents and that, in her opinion, continued visits with the grandparents were not in the best interest of the children "because of statements made by [A.B.]."[1] Finally, Moody opined that Delacruz was not in a position to adequately care for the children because she had not maintained stable housing or employment for an adequate period of time.

After hearing closing arguments from counsel, the court found that Delacruz was not in compliance with the court's orders and was unfit. It also found that any further contact with Delacruz could be harmful to the children's health and safety. The court ordered no further contact with the maternal grandparents. In the termination order, the court reiterated that there would be "no contact and no closure visit between the juveniles and the maternal grandparents." Delacruz appeals.

A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins*, *supra*. On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.

---

[1] There is no explanation in the record of the content of A.B.'s statements.

*Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit judge to assess the witnesses' credibility. *Id.*

Here, Delacruz does not challenge the statutory grounds for termination, nor does she challenge the circuit court's findings on potential harm or adoptability. Instead, she argues that in determining best interest, the circuit court can consider additional factors, including the loss of a relationship with a grandparent, and that in this case, it was not in the children's best interest to "abruptly terminate the relationship between the children and their maternal grandparents" via the termination of her parental rights. She takes issue with the testimony of Miranda Collins, the DHS caseworker, who failed to provide "factually sound evidence" to support the circuit court's best-interest determination, and she also criticizes the fact that there was "no evidence . . . in regard to the children's wishes or the depth of their relationship with the grandparents *or* the Guevaras." (Emphasis in original.) She also contends that the maternal grandparents provided material support, in the form of clothes and toys, and emotional support throughout the case and had unsupervised visitation with the children.

In support, Delacruz cites two cases: *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, and *Lively v. Arkansas Department of Human Services¸* 2015 Ark. App. 131, 456 S.W.3d 383. In both cases, this court held that termination of a father's parental rights was not in the children's best interest, in part due to close relationships between the children and the paternal grandparents.

DHS argues that Delacruz abandoned any argument regarding the children's adoptability and that the evidence supports the court's finding of potential harm. DHS

also distinguishes *Caldwell* and *Lively*, noting that in those cases, only the fathers' parental rights were terminated and the mothers remained the children's permanent custodians, meaning that adoption was not a goal in those cases. In this case, however, the goal was adoption, and the rights of the mother and the putative fathers were terminated.

Regarding Delacruz's evidentiary concerns, she did not object to Collins's testimony and offered no evidence of her own as to the children's wishes or the depth of their relationship with the grandparents. We also agree with DHS that the cases cited by Delacruz are distinguishable; not only did those cases involve only one parent's rights being terminated, but also the grandparents were significantly involved in the children's lives. In *Caldwell*, we explained that "the termination of appellant's rights endangers A.C.'s relationship with her grandmother, Sharon Caldwell, which the circuit court found to be the most stable influence on A.C. Both the DHS caseworker and Lisa Caldwell testified that it was in A.C's best interest that the relationship between Sharon Caldwell and A.C. continue." 2010 Ark. App. 102, at 7. And in *Lively*, we noted that "the children's relationship with their paternal grandparents appears to be one of the most stable influences in their lives, and termination of Jonathan's parental rights jeopardizes that relationship." 2015 Ark. App. 131, at 8, 456 S.W.3d 383, 388.

In this case, Delacruz failed to demonstrate a close bond between the children and the maternal grandparents. In fact, contrary to the facts in *Caldwell*, the circuit court heard testimony that continued visits with the grandparents would not be in the children's best interest. We are not persuaded by Delacruz's argument and hold that the circuit court did not clearly err when it terminated Delacruz's parental rights.



Affirmed.

GRUBER and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

*Tabitha B. McNulty*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.