

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–16–859

| | |
|---|---|
| STEPHEN PAUL FULS<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br>APPELLEES | **Opinion Delivered:** January 25, 2017<br><br>APPEAL FROM THE BOONE<br>COUNTY CIRCUIT COURT<br>[NO. 05JV-13-93]<br><br>HONORABLE JOHNNY R.<br>PUTMAN, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant appeals from the circuit court's termination of his parental rights to D.F.1, born 8/3/2003; D.F.2 born 12/23/2005; and M.F., born 8/20/2007. His sole argument on appeal is that there was insufficient evidence to support termination of his parental rights since the same would terminate the rights of his father to the juveniles and all parties agreed that a continued relationship between the paternal grandfather and the juveniles was in their best interest. We affirm.

The juveniles were removed from their mother's custody on September 1, 2013, and subsequently adjudicated dependent-neglected because of their mother's actions in the circuit court's December 11, 2013 adjudication order.[1] The goal of the case was "reunification with the mother or the legal father." The order noted the existence of an

---

[1] While the parental rights of the mother, Danielle Fuls, were terminated pursuant to the same order, she is not a party to this appeal.

order of protection for the mother and the juveniles against appellant. Between the juveniles' removal from their mother's custody and their subsequent adjudication as dependent-neglected, the circuit court entered an agreed order placing temporary legal custody of the juveniles with their paternal grandparents, Alvin and Lorna Fuls, on October 23, 2013. Alvin and Lorna were prohibited therein from allowing appellant to have contact with the juveniles unless supervised by the Arkansas Department of Human Services (DHS).

The circuit court entered a January 14, 2014 review order changing the goal of the case plan to reunification with appellant only, finding that he had complied with the case plan and court orders and noting that appellant was "working with his attorney to get [his] order of protection lifted or modified." Appellant's visitation was "expanded to allow more contact with [appellant] to expand visit[s] to include unsupervised [visitation] and trial placement." A formal order amending the order of protection against appellant to allow contact between him and the juveniles was entered on February 27, 2014.[2] Appellant was again found to be in compliance in the circuit court's April 7, 2014 review order. The goal of the case plan was changed to placement in appellant's permanent custody. In an order entered on June 12, 2014, the circuit court placed temporary legal custody of the juveniles with appellant.

In its July 3, 2014 review order, the circuit court found that appellant had substantially complied with the case plan and court orders, but noted his refusal to

---

[2] The circuit court had stated in its January 14, 2014 review order that the "Order of Protection entered in Circuit Court Case No[.] DR13-215-1 is modified to allow contact with the juveniles and the father including possible custody."

cooperate with submitting to random drug screens and his June 5, 2014 positive drug test for THC. Despite the positive drug test, the goal of the case plan continued to be placement in appellant's permanent custody.

In its September 18, 2014 permanency-planning order, the goal of the case plan was authorization of a plan to place custody of the juveniles with appellant, given his substantial compliance with the case plan and court orders.[3] However, following a December 9, 2014 hearing, in its December 19, 2014 fifteen-month review order, the circuit court found that appellant had not complied with the case plan and court orders, specifically noting his "discharge from [Health Recovery of Arkansas] for refusing to submit to drug screens and for missing appointments" as well as his failure to complete anger management or attend counseling, despite DHS having made several referrals. It admonished appellant that "he cannot get the Court to close this case by ignoring the orders of the Court" and further ordered that the juveniles would be returned to foster care if appellant did not begin complying with the case plan and court orders. The goal of the case plan was to maintain the juveniles in appellant's home; however, the circuit court scheduled a termination of parental rights hearing for April 14, 2015.

Following a hearing on December 15, 2014, the circuit court entered an order of emergency change of custody of the juveniles from appellant to DHS on December 16, 2014. Appellant had tested positive for "METH and AMP" at the December 9, 2014 hearing.

---

[3] Appellant had not yet started attending counseling.

SLIP OPINION

The circuit court entered an order on December 31, 2014, finding that probable cause existed for the juveniles' December 9, 2014 removal and entered an order adjudicating the juveniles' dependent-neglected, as stipulated to by the parties, on January 22, 2015. The adjudication order stated that temporary legal custody of the juveniles should continue with Alvin and Lorna, with whom the juveniles had been living since December 17, 2014. The goal of the case continued as reunification. Appellant's visitation with the juveniles was to be supervised by Alvin and Lorna. A termination of parental rights hearing was set for April 17, 2015.

The circuit court then entered an order of emergency change of custody from Alvin and Lorna to DHS on February 6, 2015, on account of Alvin and Lorna's inability to care for the juveniles due to financial strain and statements made by appellant of his "possible intentions of leaving the state" with the juveniles. The circuit court entered a probable cause and adjudication order finding probable cause for the juveniles' removal from Alvin and Lorna's custody on February 11, 2015.

In its March 20, 2015 review order, the circuit court stated that appellant had not complied with the case plan and court orders, specifically noting that he "did not complete his anger management counseling, he [had] not made himself available to his case worker, had not made himself available to random drug screens, he [had] not obtained a drug assessment, and he [had] not kept all appointments regarding the case." It specifically stated that "In the event [appellant failed] to comply with those conditions or the terms of the case plan[, DHS] shall be relieved from providing services to him." The goal of the case plan continued to be reunification.

In its April 21, 2015 review order, the circuit court stated that appellant had not complied with the case plan and court orders, specifically noting the same reasons listed in its March 20, 2015 review order with the addition of appellant's failure to make himself available for a scheduled hair follicle test. The goal of the case plan continued to be reunification.

DHS filed a petition for termination of appellant's parental rights on August 31, 2015. The grounds given in support of termination of his parental rights were:

1. That the juveniles had been adjudicated dependent-neglected and had continued out of the custody of the parent for twelve months and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions which caused the removal, those conditions had not been remedied by the parent;[4]

2. That the parent had failed to maintain meaningful contact with the juveniles;[5] and

3. That, subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that placement of the juveniles in the custody of the parent is contrary to the juvenile's health, safety or welfare and that despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances which prevent the placement of the juveniles in the custody of the parent.[6]

A hearing on DHS's petition to terminate appellant's parental rights was held on April 27, 2016. Appellant's caseworker testified that appellant had not complied with the case plan; had not complied with court orders; "would start counseling, but then he would stop"; and was "cooperative with the department at the beginning" of the case, but

---

[4] Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a*) (Repl. 2015).

[5] Ark. Code Ann. § 9–27–341(b)(3)(B)(ii)(*a*).

[6] Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*)(i).

started failing drug tests and "became uncooperative" as the case progressed. When asked if appellant had done anything to regain his juveniles, the caseworker responded that she had "not been able to have contact with him until yesterday[,]" though she had attempted to contact him unsuccessfully. DHS had referred appellant for services and "[h]e would start initially, then start missing or not going at all." She did not "feel [appellant] would follow any order for the future any better than he [had] ones for the past." Finally, she testified that she believed appellant was "capable" of following the case plan and court orders, but she thought it was "a willful choice by [appellant] not to follow the case plan." She saw no detriment to the juveniles in severing their relationship with appellant.

Regarding appellant's parents, the caseworker testified that she knew the oldest child "really would like to have contact with his grandfather" whom he spoke of "often." She noted that the paternal grandfather had been placed on all the juveniles' contact list for calls. She stated that "[i]f the children's therapists recommend or approve it" and "[a]s long as those contacts are appropriate and are not detrimental to the children, the department doesn't have any concern about continued contact" between the juveniles and the paternal grandfather. She stated that "[i]t's very important for the children to know they are loved even if a family member can't take the responsibility of raising them full-time, for them to know that they are loved and cared about and not forgotten."

Regarding the juveniles' adoptability, she testified that the goal was to adopt the juveniles as a sibling group. She stated her belief that such an adoption was possible—though the juveniles did have "some behavior issues" that were "being addressed"—

because the juveniles were "[m]ostly happy, healthy, beautiful children." She opined that the juveniles are "highly adoptable."

No other witnesses were presented. Appellant chose not to be present in the courtroom during the hearing. The attorney ad litem noted in his closing argument that Alvin was in the courtroom, as he had been at every hearing, "whether his son chose to participate or not." The attorney ad litem stated "I would like as long as that contact is appropriate, at least until an adoption is finalized, I would like for the children to be able to have continued contact with [Alvin]."

The circuit court then granted the petition from the bench. When asked if it was allowing continued contact with the grandparents as long as it was appropriate, the circuit court stated that contact between the juveniles and the grandparents was "fine" with it. It stated that it was "not going to order it, but [it would] encourage [DHS] to allow visitation, if appropriate." In its June 28, 2016 order terminating appellant's parental rights, the circuit court found that DHS had proven all three grounds asserted against appellant. It also found that termination of appellant's parental rights was in the juveniles' best interests considering the "high likelihood" of the juveniles' adoption as testified to by the caseworker and the potential harm to the juveniles if returned to appellant's custody given appellant's drug use and instability, which was also testified to by the caseworker. This timely appeal followed.

A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proven by clear and convincing

evidence.[7] The question this court must answer is whether the trial court clearly erred in finding that there was clear and convincing evidence of facts warranting the termination of parental rights.[8] Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[9]

A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence.[10] Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established.[11] On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous.[12] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[13] In determining whether a finding is clearly

---

[7] *Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, at 9, 344 S.W.3d 670, 675 (citing *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008)).

[8] *Id.* (citing *Hall v. Ark. Dep't of Human Servs.*, 101 Ark. App. 417, 278 S.W.3d 609 (2008)).

[9] *Id.*, 2009 Ark. App. 606, at 10, 344 S.W.3d at 675 (citing *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722).

[10] *Delacruz v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 387, at 5, 465 S.W.3d 867, 870 (citing Ark. Code Ann. § 9–27–341(b)(3) (Supp. 2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

[11] *Id.* (citing *Dinkins*, *supra*).

[12] *Id.*

[13] *Id.*

erroneous, an appellate court gives due deference to the opportunity of the circuit judge to assess the witnesses' credibility.[14]

Appellant does not challenge the statutory grounds for termination, nor does he challenge the circuit court's findings on potential harm or adoptability. Instead, he argues that the circuit court erred in finding that termination of his parental rights was in the best interest of the juveniles since it would have terminated his father's rights as well. In support of this argument, he relies on *Caldwell v. Arkansas Department of Human Services*, a case in which this court held that termination of a father's parental rights was not in the juveniles' best interest, in part, due to a close relationship between the juveniles and the paternal grandparents.[15] However, this case is distinguishable on the facts.

In *Caldwell*, the child was in her mother's custody, so adoption was not in consideration. This court specifically stated that because the child was in her mother's custody, "termination of [Caldwell's] parental rights will not serve to achieve permanency for" the child. In this case, the mother voluntarily consented to relinquish her rights so that appellant's failure to comply with the caseplan led to the goal of the case becoming adoption. The juveniles' need for permanency and stability overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child.[16] The intent of the statute is to provide

---

[14] *Id.*, 2015 Ark. App. 387, at 6, 465 S.W.3d at 870.

[15] 2010 Ark. App. 102.

[16] *McElwee v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 214, at 7, 489 S.W.3d 704, 708 (citing *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, at 6, 474 S.W.3d 510, 514).

permanency in the juveniles' lives in all circumstances where a return to the parent is contrary to the juvenile's health, safety, or welfare and cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[17] To refuse to terminate appellant's parental rights where the mother has relinquished her rights and the evidence is clear that appellant is incapable or indifferent to remedying his situation so he could regain and maintain custody of the juveniles, solely to continue a relationship with grandparents—who are unable to care for the juveniles—is contrary to the need for permanency advocated by the statute.

This court is not left with a definite and firm conviction that a mistake has been made in light of appellant's failures and setbacks. A parent's past behavior is often a good indicator of future behavior.[18] We cannot find that the circuit court erred in finding that termination of appellant's parental rights was in the best interest of the juveniles.

Affirmed.

GRUBER, C.J., and GLADWIN, J., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.

---

[17] *Id.*

[18] *Villaros v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 399, at 7, 500 S.W.3d 763, 767 (citing *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, 434 S.W.3d 378; *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160).