

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-17-456

| | |
|---|---|
| | **Opinion Delivered** October 4, 2017 |
| TEGAN DOWDY | |
| APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT |
| V. | [NO. 17JV-15-287] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE MICHAEL MEDLOCK, JUDGE |
| APPELLEES | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Tegan Dowdy appeals the Crawford County Circuit Court order terminating her parental rights to her three children. Dowdy argues that the circuit court clearly erred in finding sufficient proof of grounds for termination and in finding that termination was in the children's best interest. We affirm.

Four-year-old JW, three-year-old AD, and nine-day-old TA were taken into custody by the Department of Human Services (DHS) in December 2015. A protective-services case had been opened in June 2015 after it had been determined that Dowdy's boyfriend had caused marks on AD's legs. Both Dowdy and her boyfriend tested positive for THC and were offered services, but they did not participate. In October 2015, there was a report that Dowdy had slapped JW in the face, leaving a handprint. Prior to TA's birth, Dowdy had been evicted from her home and was staying with friends. The home she brought TA to from the hospital was inappropriate due to dog feces around the house and the lack of a crib.

SLIP OPINION

JW and AD had been living with Dowdy's father and his wife since June 2015, but Dowdy had threatened to take them and DHS believed she would flee.

The children were adjudicated dependent-neglected in January 2016 due to parental unfitness and neglect. The court specifically noted Dowdy's use of illegal drugs and the hazardous home environment, and it found that Dowdy had physically abused JW. Dowdy was ordered to complete certain services and to obtain appropriate housing, employment, and transportation. After an April 2016 review hearing, the court found that Dowdy had completed a drug-and-alcohol assessment and a psychological evaluation, but she had attended only seven out of twenty-six parenting-without-violence classes. The court found that she remained in the same inappropriate living situation and lacked adequate income and transportation. Following a second review hearing three months later, the court found that Dowdy had made no further progress on her case plan. At that point, she was living with friends in Oklahoma. The circuit court changed the goal of the case to adoption following a November 2016 permanency-planning hearing in which the court found that Dowdy had not complied with the case plan or court orders.

The termination hearing was held in February 2017. The evidence established that Dowdy was homeless, jobless, and incarcerated. Dowdy testified that she was incarcerated in the county jail after having been arrested on three failure-to-appear warrants stemming from driving tickets, including driving with a suspended license. She said that she had given up her car due to these legal troubles and planned to get a bus pass for transportation. She

SLIP OPINION

testified that she had contacted someone about working at the chicken plant and had made plans to apply for an income-based apartment but was arrested before she could do so.

Dowdy had completed a psychological evaluation and a drug-and-alcohol assessment but had not completed the recommended treatment. The drug-treatment facility would not accept Dowdy while she was taking a benzodiazepine. Dowdy said that she was prescribed this medication to treat depression, and she declined to quit taking it because it was the only medication that had helped her after having tried several others. Dowdy said that she had recently made a down payment to start classes at a treatment facility in Oklahoma, but she then decided to return to Arkansas. She testified that she had completed parenting-without-violence classes and turned in a certificate to DHS, but the caseworker, K.C. Oliver, testified that she never received the certificate. Dowdy denied having slapped JW in the face and said that she could not name offhand anything she had learned from the classes.

Dowdy testified that she could "have everything together" and be in a position to take custody of the children if the court would give her four weeks from the time she is released from jail. When asked what had changed to allow her to accomplish these things now when she had failed to act over the course of the past year, Dowdy said that she had stopped listening to family and friends who thought they knew what was better for her. Oliver testified that all of the children were happy and healthy and had no barriers to adoption. TA's foster parents wanted to adopt her.

SLIP OPINION

The circuit court announced from the bench that it was terminating Dowdy's parental rights, stating that any plan for rehabilitation that would enable reunification within a reasonable time was not viable or believable based on Dowdy's current circumstances. In its order, the court found that four statutory grounds for termination had been proved. TA's father executed a consent to the termination of his parental rights, but the court denied DHS's petition to terminate the parental rights of Zachary Wright, JW and AD's father.

The standard of review in appeals of termination-of-parental-rights cases is de novo, but we reverse a circuit court's decision to terminate parental rights only when it is clearly erroneous. *Hernandez v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 250, 492 S.W.3d 119. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Id.* In deciding whether a finding of the circuit court is clearly erroneous, we give great deference to the superior opportunity of the circuit court to observe the parties and to judge the credibility of witnesses. *Wafford v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 299, 495 S.W.3d 96.

The circuit court must find by clear and convincing evidence the existence of one or more statutory grounds for termination and that termination is in the best interest of the children. *Id.* Dowdy contends that the evidence is insufficient to support any of the four statutory grounds found by the circuit court. We disagree and affirm on the "subsequent factors" ground. This ground is proved when other factors or issues arose subsequent to the

SLIP OPINION

filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) (Repl. 2015). Dowdy argues that the issues of drug use and housing instability cannot be considered "subsequent factors" to prove this ground and that DHS failed to offer appropriate family services to assist her with these issues.

The condition of the home Dowdy was living in with her infant, her drug use, and her physical abuse of a child were all factors that led to the removal of the children from her custody. Subsequent to the filing of the petition for dependency-neglect, Dowdy was ordered to have appropriate housing for the children, employment to support the children, and transportation. At the termination hearing, the evidence established that Dowdy was homeless, jobless, lacked transportation, and was incarcerated. There was testimony that Dowdy had been staying at a day-treatment center, and she had given up her car due to legal troubles. Although Dowdy testified that she had recently started making plans to obtain a job, transportation, and an apartment, her testimony indicated that there had been nothing that stopped her from acting sooner. She was first ordered to accomplish these tasks more than one year earlier and again in each subsequent order. Her failure to act to secure appropriate housing and stable employment and her indifference to remedying the situation

are contrary to the children's health, safety, and well-being and support termination of her parental rights. *See Spencer v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 96, 426 S.W.3d 494. The circuit court found in prior hearings that DHS had made reasonable efforts to provide services, and Dowdy fails to indicate which services could have prompted her to apply for a job and an apartment at an earlier date. *See Martin v. Ark. Dep't of Human Servs.*, 2017 Ark. 115, 515 S.W.3d 599 (affirming where appellant did not indicate which particular services DHS could have offered him that would have prevented him from choosing his children's abuser over his children). From our de novo review, we hold that the court's finding on this ground is not clearly erroneous.

In addition to at least one ground supporting termination, Arkansas Code Annotated section 9-27-341(b)(3)(A) requires a finding by clear and convincing evidence that termination is in the best interest of the juveniles, including consideration of the likelihood that they will be adopted and the potential harm caused by returning custody of them to the parent. Our appellate review is limited to whether the circuit court's best-interest finding was clearly erroneous. *Hernandez, supra.* Dowdy argues that termination was not in the children's best interest because JW and AD were placed with their grandparents at the time of the termination hearing, and the rights of their father had not been terminated. She complains that the best-interest analysis failed to consider the effect the termination decision would have on the relationship between the maternal grandparents and the children. Dowdy also argues that TA should be placed with the other children and that granting her more time

SLIP OPINION

would have provided an opportunity to reunify all three children.

After the permanency-planning hearing and before the termination hearing, JW and AD were placed in the temporary custody of Dowdy's father and his wife, with whom they had previously lived for several months. At the conclusion of the termination hearing, however, DHS argued to the court that custody should be removed from them immediately based on evidence that Dowdy's father had previously pleaded guilty to the sexual assault of a minor in his home. The matter was not immediately resolved.

Dowdy cites *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, in which we held that the termination of the father's rights endangered the child's relationship with her paternal grandmother, which the circuit court found to be the most stable influence on the child. Here, however, the children's future relationship with their grandparents was uncertain based on the evidence submitted by DHS. Furthermore, in *Caldwell*, the child had already been returned to the custody of her mother. Here, although the court found that DHS had failed to present sufficient proof to terminate the rights of JW and AD's father, the children were not placed with him. In fact, he testified that he had not seen the children in four and a half years. Unlike in *Caldwell*, the circumstances here do not demonstrate that the best-interest finding was clearly erroneous. The children's need for permanency and stability overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *Fuls v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 46, 510 S.W.3d 815.

7

SLIP OPINION

Dowdy's argument regarding placement of TA was not preserved. *See Ware v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 480, 503 S.W.3d 874.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.